UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD D. ALLEN, SR.,

    Plaintiff,

v.                                                    Case No. 1:17-cv-376

COMMISSIONER OF SOCIAL                    Hon. Ray Kent
SECURITY,

    Defendant,
_____/

# OPINION

        Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

        Plaintiff alleged a disability onset date of January 3, 2013. PageID.216. He identified his disabling conditions as congestive left heart failure, hypertension, chronic kidney disease stage II, edema, anemia, and obese. PageID.220. Prior to applying for DIB, plaintiff completed two years of college and had past employment as a real estate adviser, mortgage loan officer, loan modification specialist, contract due diligence underwriter, and board member/consultant for a non-profit organization. PageID.221. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a partially favorable written decision, which found that plaintiff became disabled as of May 6, 2016. PageID.46-55. This decision, entered on September 19, 2016, was later approved by the Appeals Council, has become the final decision of the Commissioner, and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

II. **ALJ's DECISION**

The ALJ issued a partially favorable decision. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 3, 2013, and met the insured status requirements of the Social Security Act through March 31, 2017.

3

PageID.48. In reaching this determination, the ALJ noted that plaintiff worked after the alleged disability onset date on a part-time basis for H&R Block and the Village Resource Center Program. PageID.48. However, plaintiff's earnings from this employment in 2013, 2014, and 2015 did not rise to the level of substantial gainful activity. PageID.48. The ALJ made separate findings at steps two and four, ultimately concluding that while plaintiff was not disabled on January 3, 2013 (the alleged onset date of disability), he became disabled on May 6, 2016 (the established onset date of disability).

At the second step, the ALJ found that since the alleged onset date of January 3, 2013, plaintiff had the following severe impairments:

> congestive heart failure, hypertension, hypertensive cardiomyopathy, degenerative joint disease of the left knee (status-post multiple arthroscopic knee surgeries in 1969, 1985, and 1987), and obesity [October 2015 height: 70.5 inches, weight: 256.5 pounds and body-mass index (BMI): 36.28].

PageID.48. The ALJ also found that, "b]eginning on the established onset date of disability, May 6, 2016, the claimant has had the following severe impairment status-post lacunar infarct [stroke] and depression (20 CFR 404.1520(c))." PageID.48.

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.49.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, prior to May 6, 2016, the date the claimant became disabled, the claimant had the residual functional capacity to perform a somewhat reduced range of sedentary work as defined in 20 CFR 404.1567(a) of the Regulations. The claimant could lift and/or carry up to 10 pounds, sit for up to 6 hours total and stand and/or walk for up to 2 hours total in an eight-hour workday. He could occasionally climb ramps and stairs, balance, stoop and crouch, but never climb ladders, ropes or scaffolds, kneel or crawl. He could do no operation of leg or foot controls with the left lower

extremity. He could have occasional exposure to extreme cold, to fumes, odors, dusts, gases and areas of poor ventilation and could have occasional exposure to hazards, including unprotected heights and dangerous moving machinery.

PageID.53.

The ALJ also found at the fourth step that plaintiff's residual functional capacity (RFC) changed as of May 6, 2016:

> After careful consideration of the entire record, the undersigned finds that, beginning on May 6, 2016, the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) of the Regulations. The claimant can sit for up to 6 hours total and stand and/or walk for up to 2 hours total in an eight-hour workday. He could occasionally climb ramps and stairs, balance, stoop and crouch, but never climb ladders, ropes or scaffolds, kneel or crawl. He could do no operation of leg or foot controls with the left lower extremity. He could have occasional exposure to extreme cold, to fumes, odors, dusts, gases and areas of poor ventilation and could have occasional exposure to hazards, including unprotected heights and dangerous moving machinery. He requires the use of a cane to aid ambulation and is limited to doing simple, routine work that involves making simple work-related decisions and tolerating occasional workplace changes.

PageID.50.

Based on these RFC determinations, the ALJ found that:

> Prior to May 6, 2016, the claimant was capable of performing past relevant work as a loan mortgage underwriter. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

PageID.54. However, "[b]eginning on May 6, 2016, the claimant's residual functional capacity prevented the claimant from performing his past relevant work (20 CFR 404.1565)." *Id*.

At the fifth step, the ALJ found that "[s]ince May 6, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." PageID.55. The ALJ further found that, "[e]ven if the claimant had the residual functional capacity for the full

5

range of sedentary work, a finding of 'disabled' is directed by Medical-Vocational Rule 201.06." PageID.55. Accordingly, the ALJ determined that plaintiff was not disabled prior to May 6, 2016, but became disabled on that date, and has continued to be disabled through September 19, 2016, the date of the decision. PageID.55.

### III. DISCUSSION

The issue raised in plaintiff's *pro se* appeal is whether he was disabled for the period of time between January 3, 2013 (his alleged onset date) and May 6, 2016 (his established onset date of disability). Plaintiff raised nine issues on appeal.

> **A. The plaintiff's request for appeal was based on the Social Security Administration's (SSA's) reasoning and erroneous presumption regarding plaintiff's job title and ownership of his work product.**

Plaintiff contends that the SSA's denial letter dated September 15, 2014, included incorrect information regarding the nature of his work (i.e., the SSA referred to plaintiff "as president and owner of his own auditing company" rather being "employed as a contract mortgage loan underwriter for various banks and real estate investment firms since 1988"). PageID.580. Plaintiff's claimed error misconstrues the nature of this appeal. The only matter reviewed by the Court is the final decision of the Commissioner. *See* 42 U.S.C. § 405(g). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). In this case, the "final decision" is the ALJ's partially favorable decision entered on September 19, 2016. In that decision, the ALJ concluded that prior to May 6, 2016, plaintiff could perform his past relevant work as a loan mortgage underwriter. PageID.54. This is consistent with plaintiff's testimony that in 2001 he was a loan underwriter for IndyMac, PageID.70-72, and the statement

in his brief that he was employed as a contract loan mortgage underwriter. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ did not follow the stated SSA Blue Book Guidelines regarding left congestive heart failure.

In this error, plaintiff apparently contends that he should have been found disabled under the Listing of Impairments. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Plaintiff contends that he met the requirements of Listing 4.00(d) [4.00D] because he had an ejection rate of 30% or less. PageID.581. Plaintiff relies on a letter dated November

17, 2014 from Dr. Ryan, who stated that on February 4, 2014, plaintiff presented with severe left ventricular heart failure with an ejection fraction of 0.20 to 0.25, and that on a good medical program plaintiff "has improved somewhat but his ejection fraction is clearly not normal nor is his exercise capacity" and that "[h]e is a New York Heart Association Class 2-3 with his congestive heart failure." Exhibit attached to Brief (PageID.588).[1]

Plaintiff misconstrues the Listings. Under his theory, plaintiff is disabled if he has an ejection fraction of 20% to 25%. This is incorrect. As an initial matter, there is no listed impairment at 4.00D. This section sets forth definitions and other information used to evaluate chronic heart failure (CHF). 4.00D4 summarizes the information needed to evaluate CHF under Listing 4.02. First, a claimant must demonstrate "objective evidence, as described in 4.00D2, that you have chronic heart failure." 4.00D4a. One type of the required objective evidence is "an EF [ejection fraction] of 30 percent or less measured during a period of stability (that is, not during an episode of acute heart failure)." 4.00D2a(ii).

Based on the record, it appears that plaintiff is claiming that he suffers from chronic heart failure as set forth in Listing 4.02, which provides as follows:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
>> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

---

[1] It is unclear as to whether this particular letter was included in the administrative record.

2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

and

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

Listing 4.02, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ acknowledged that plaintiff had one instance of an ejection fraction of less than 30%:

> An electrocardiogram from February 2014 showed sinus bradycardia at 55 beats per minute. Left ventricular hypertrophy was present. The ejection fraction was in the range of 20% to 25% with diffuse hypokinesia. There was mild insufficiency of the mitral and aortic valves with bilateral enlargement and a pulmonary artery elevated at 46 millimeters (Exhibits 4F/1-7 and 6F/15).

PageID.52. However, the ALJ concluded that plaintiff did not meet a listed impairment at step three, in part because there is no evidence that plaintiff had chronic heart failure as specified in the Listings:

> Regarding section 4.02, there is not chronic heart failure, while on a regimen of prescribed treatment, with symptoms and signs described in section 4.00D2 of the Listing of Impairments. Regarding section 4.04 for ischemic heart disease, there are not symptoms due to myocardial ischemia, as described in sections 4.00E3 through 4.00E7 of the Listing of Impairments.

PageID.49.

The ALJ's decision with respect to the Listings is supported by substantial evidence. Plaintiff did not meet the threshold requirement for 4.02A because he did not demonstrate chronic heart failure with an ejection fraction of 30% or less while on a regimen of prescribed treatment during a period of stability. The only documented ejection fraction of less than 30% was in February 2014 when he started treatment with Dr. Ryan. Defendant points out that by July 9, 2014, plaintiff's ejection fraction had improved to 0.40 to 0.45 (40% to 45%). PageID.388. At that time, Dr. Ryan stated "as compared to an echocardiogram from February, there is clear improvement in left ventricular systolic function as well as a reduction in pulmonary artery pressure consistent with the patient's improvement in his left ventricular dysfunction." PageID.388. Accordingly, plaintiff's claim of error will be denied.

10

**C.   The ALJ relied heavily on two letters, PageID.185-188, written by the plaintiff as evidence of his ability to work.**

Plaintiff contends that the ALJ improperly relied on letters which he wrote to congressional representatives seeking assistance with his initial disability claim. Plaintiff is apparently referring to the following statement:

> The two lengthy letters that the claimant wrote in February 2016 and March 2016 at Exhibit 7D/4-7 is an indication of his ability to communicate in writing and to describe his situation in detail. Although this evidence is not necessarily conclusive, it is one indicator an ability to perform skilled work tasks.

PageID.51. These letters, one addressed to Senator James Lankford (February 11, 2016) and one addressed to Senator Debbie Stabenow (March 11, 2016) appear at PageID.185-188, and are signed by plaintiff. Plaintiff contends that these letters should not have been given weight because neither letter "verifies if congestive heart failure would keep Plaintiff from being able to write any letters." PageID.582. Plaintiff's contention is incorrect. The ALJ could properly view these letters as evidence that plaintiff retained the mental ability to perform skilled work tasks during February and March 2016. Under the regulations, an ALJ must consider all of the evidence in the record when evaluating a claimant's ability to perform work. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). Accordingly, plaintiff's claim of error will be denied.

**D.   The ALJ and initial claims reviewer (DDS) did not accept medical proof (PageID.190) regarding Physician Medical Statements about the severity of Mr. Allen's congestive heart a failure and the resulting limitations he must live with (see PageID.440(7), 441(g) and 383 under Cardiovascular Procedures listed as Level III of the (NYHA III). Also see PageID.383 under the heading Impressions and Plans.**

Plaintiff's claim of error involves medical records of examinations by Dr. Ryan (March 13, 2014, PageID.383) and a visit with Dr. Ryan (June 16, 2014, PageID.190) (diagnosing

11

plaintiff with "Chronic kidney disease, Stage II (mild)" and "Left Heart Failure"). Plaintiff also contends that the ALJ did not take limitations into effect given by Dr. Ryan's medical source statement dated November 17, 2014. PageID.440-443. Plaintiff is apparently contesting the ALJ's failure to simply adopt Dr. Ryan's opinions. He raises similar arguments in § III of his brief. PageID.585.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See*

*Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ reviewed Dr. Ryan's opinion as set forth in a Physical Medical Source Statement dated November 17, 2014 (PageID.440-443), stating in pertinent part as follows:

> As for the opinion evidence, the undersigned assigns partial weight to the November 17, 2014 opinion statement of treating cardiologist Ralph G. Ryan, MD, in Exhibit 8F. Dr. Ryan indicated a diagnosis of congestive heart failure with symptoms of shortness of breath, exercise intolerance, and lightheadedness. Medications caused fatigue, a lack of attention and an inability to function. Dr. Ryan left blank the frequency and length of contact, the prognosis, and the clinical and objective findings. There were no psychological conditions that affected the claimant's physical condition. The claimant was able to walk less than one city block without rest or severe pain. He could sit for 30 minutes at one time, and stand for ten minutes at one time. In an 8-hour workday, the claimant could sit for about two hours and stand/walk for less than two hours. He needed to be able to walk for about eight to eleven minutes out of every 60 to 90 minutes. He would need unscheduled breaks on an unpredictable basis. He needed to elevate his legs to a horizontal position for 30% to 80% of the workday due to edema and leg pain. The claimant could rarely lift and carry less than ten pounds, and rarely twist and stoop (bend). He could never climb stairs or ladders. The claimant had no impairment of reaching, handling, or fingering. He would be off-task for 25% or more of the workday and was incapable of even "low-stress" work. The claimant would be absent from the workplace more than four days per month. All of these deficits had been in effect since February 2, 2014.
>
> The undersigned assigns partial weight for a few reasons. Chiefly, the medical evidence and objective findings do not support such restricted functioning since February 2, 2014. The statement in Exhibit 8F appears to be somewhat internally inconsistent in noting the absence of a psychological condition and proposing that the claimant was not capable of performing low stress work. The undersigned does not find evidence that the claimant needed to elevate his legs regularly much less to a horizontal position. There is no indication of how this physician arrived at the more than four absences per month and the record does not substantiate such a somewhat imprecise claim.

PageID.52-53.

Based on this record, the ALJ's decision assigning partial weight to Dr. Ryan's statement is supported by substantial evidence. The ALJ pointed out the internal inconsistencies and lack of evidence to support the extreme limitations set forth in the doctor's statement. Accordingly, plaintiff's claim of error will be denied.

> **E.    Per the Social Security Disability Help document entitled "Cardiovascular Disorder and Social Security Disability" (attached hereto as Exhibit 3) it states that if the claimant is hospitalized two or more times for issues related to loading (water or fluid retention) the claimant has grounds for a favorable claims decision.**

Plaintiff's claim of error is based upon his reading of an article from a "Social Security Disability Help" webpage from http://www.disability-benefits-help.org. PageID.597. The information cited by plaintiff is not a regulation or statute applicable to his claim in this case. Rather, it appears to contain information assembled by a third-party to help individuals pursue disability claims. Accordingly, plaintiff's claim of error will be denied.

> **F.    The ALJ has a documented bias in favor of the SSA in cases before him and prior to appeals to the civil courts.**

Plaintiff contends that ALJ Condon was biased because he "has the highest case denial rate (45%), the lowest case approval rate (35%) and highest dismissal rate of 20% of ALL the judges in Michigan or the Nation." PageID. 584 (emphasis in original). Hearing officers are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1981). A party can rebut this presumption by a showing of conflict of interest or other specific reason for disqualification, but the burden of establishing a disqualifying interest is upon the person making the contention. *Id*. Plaintiff cannot rebut this presumption by simply reciting statistics regarding ALJ Condon's history of adjudicating cases. As one court observed, "[a]rguments which purport to demonstrate

14

that an ALJ is biased through the use of statistics relating to their approval and denial rates are 'inadequate to show bias' without additional evidence." *Berry v. Commissioner of Social Security*, No. 16-10548, 2016 WL 7664225 at *15 (E.D. Mich. Dec. 8, 2016), report and recommendation adopted, 2017 WL 67458 (Jan. 6, 2017), citing *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) and other cases. Accordingly, this claim of error will be denied.

> **G. The ALJ totally ignored or discounted Mr. Allen's cardiologist's written statement of his conditions and limiting functionality.**

After the ALJ's decision, plaintiff presented medical records to the Appeals Council reflecting his condition from June 22, 2007 through April 6, 2011 (referred to in the medical record as Exhibit 18F). PageID.542-568, 584. Plaintiff contends that these records support his cardiologist's statement of his conditions and limitations. In this regard, the Court notes that a record from June 29, 2007 indicates that plaintiff is mildly obese, with uncontrolled hypertension and "mild congestive heart failure." PageID.552. Plaintiff stated that he did not present this information earlier because "[o]riginally, the SSA only sought medical records for the period of time one year prior to his onset date of January 3, 2013." PageID.584.

When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g).[2] *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Sentence six provides that "[t]he court . . . may at any time

---

[2] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). For purposes of a remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The party seeking the remand bears the burden of demonstrating that the good cause and materiality requirements are met. *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Here, even if the Court found that plaintiff had good cause for failing to present the evidence to the ALJ (i.e., according to plaintiff, he was instructed to present only medical records generated one year before his alleged onset date of January 3, 2013), plaintiff has not established that the evidence is new or material. First, this evidence is not "new." The medical records presented to the Appeals Council were in existence years before plaintiff's administrative hearing. Second, plaintiff has not met his burden as to materiality because he has not shown how the Commissioner would have reached a different disposition of the disability claim if presented with the evidence. In evaluating plaintiff's heart condition, the ALJ noted that there was a lack of medical findings that plaintiff was disabled in 2013:

> [T]he record of medical treatment in this case began in approximately January 2014 (in Exhibits lF and 6F), which is somewhat at odds with the alleged disability onset date of January 3, 2013, a full year earlier. The undersigned afforded the claimant a benefit of the evidence in proceeding to steps two through four of the sequential evaluation for the period from January 3, 2013 until January 2014. However, the lack of medical findings and treatment during 2013 sharply undercuts the contention of a disability during that year. Dr. Ryan at Exhibit 8F/4, restricted his opinion to the period that began on February 2, 2014, thereby reflecting the 13-month lapse between the alleged onset date and the beginning of his cardiovascular impairments in earnest.

PageID.51. Plaintiff's additional evidence that he was diagnosed with mild congestive heart failure would not have caused the ALJ to reach a different disposition. On the contrary, the medical records submitted by plaintiff indicate that his congestive heart failure identified in 2007 was so mild that it did not affect his ability to work. Such a record supports the ALJ's finding that plaintiff's cardiovascular impairments did not "begin in earnest" until February 2014. Accordingly, plaintiff's claim of error will be denied.

### H. The ALJ did not allow plaintiff to present evidence regarding the requirements of commercial mortgage underwriting jobs

Plaintiff contends that the ALJ did not allow him to present evidence regarding the requirements of a commercial mortgage underwriter after the vocational expert (VE) testified. PageID.585. As an initial matter, plaintiff presented arguments at the administrative hearing that he did not have the education to enter the current market as an underwriter. PageID.97-99. In response, the VE stated that plaintiff would "be able to do what he did in the past if he could get the job." PageID.98. Plaintiff stated that he could not "enter the market" (presumably because "they don't have any work for 60-year-old underwriters with two years of college"), and offered to present eight job listings for "various markets, like Chicago, California, Boston, Saint Louis . . ." PageID.97. When asked about this issue, the VE responded, "Given the current state of the

market, he would have a tougher time getting employment in that area, so it goes to the hiring issue, not necessarily the . . . ability to do the job." PageID.99.

Plaintiff has presented no legal basis to support this claim. The applicable statute provides in pertinent part:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, <u>regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work</u>.

42 U.S.C. § 1382c(a)(3)(B) (emphasis added). In short, the question of whether plaintiff was likely to be hired for specific positions in Chicago, California, Boston or St. Louis was not relevant to whether plaintiff was disabled under the Social Security Act. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 27, 2018                    /s/ Ray Kent
                                             United States Magistrate Judge